[S. F. No. 13553. In Bank.—January 30, 1932.]

CLYDE E. BROWN, as Administrator, etc., Appellant, v. CHAS. S. BACHELDER, Respondent.

754

Clarence N. Riggins for Appellant.

D. L. Beard for Respondent.

SEAWELL, J.—Plaintiff sued as administrator of the estate of Ella Rogers, deceased, to quiet title to a strip of property 60 feet by 1340.46 feet situate in Napa County, and delineated on the map of Sproul's Addition to East Napa, recorded in 1875, as that portion of Spring Street which lies east of East Avenue between lands on the north

formerly owned by plaintiff's intestate, and now owned by plaintiff in his personal capacity, and lands on the south owned by defendant Bachelder. Said strip of land was never opened or improved as a public street, but remained inclosed in its original state by a fence built many years ago, as a part of the land on the north now owned by plaintiff. This inclosure fence was still standing at the time of the trial. Said lands are in a rural district, and have been devoted only to agricultural uses. Plaintiff as administrator claimed that his intestate at the time of her death was the owner of said disputed strip by adverse possession. Defendant Bachelder disclaimed any interest in the northerly half of the strip, but asserted ownership to the southerly half. The court decreed that plaintiff was the owner of the northerly one-half, 30 feet by 1340.46 feet, and defendant Bachelder the owner of the southerly one-half. From that portion of the judgment quieting said defendant Bachelder's title to the southerly one-half, plaintiff prosecutes this appeal.

E. R. Sproul, who subdivided the tract in 1874, and through whom both plaintiff and defendant Bachelder deraign title to their respective parcels on the north and south, was made a party defendant upon the untenable theory that he had retained the record title to said strip. Summons was served on him by publication. Defendant Bachelder sought to show upon the trial that Sproul was dead, but the court was not satisfied with the sufficiency of the proofs and accordingly entered a default judgment against said Sproul based on constructive service.

From a consideration of the description in the deed through which defendant Bachelder claims title to the parcel to the south of the strip in controversy, we are impelled to the conclusion that said deed carried the title of Bachelder to the center line of said 60-foot strip. Section 1112 of the Civil Code provides as follows: "A transfer of land bounded by a highway passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant." (See, also, sec. 831, Civ. Code, and sec. 2077, subd. 4, Code Civ. Proc.) That the presumption is highly favored in the law is made clear by the discussion of this court in *Anderson* v. *Citizens' Sav. & Trust Co.,*

185 Cal. 386 [197 Pac. 113]. ■ The owner and dedicator of the street in the instant case contemplated that it should be reserved to public use. In the event of an abandonment or failure to accept a dedication, a strip of land the width of a street can be of little use to the dedicator who has parted with title to all lands on both sides of the street, as was done by the original dedicator in the instant case, and it will not in such circumstances be presumed that he intended to retain the fee as a remnant of his private estate.

*Anderson* v. *Citizens' Sav. & Trust Co., supra,* is authority for the proposition that the presumption applies where at the time the conveyance is executed a dedication has not been completed by public user, or where the public use has been abandoned.

In the case herein Bachelder's tract is described in the deed from Sproul, executed in 1878, as bounded on the west by the east side of East Avenue, and on the north by the south side of Spring Street. ■ The south side of Spring Street is the south half thereof. By virtue of the presumption favoring a conveyance to the center line, a description of property as bounded by the south side of a street must be taken as carrying the title to the limit of the south side, which is the center line of the street. Had Sproul wished to exclude any portion of the strip marked as a street on the map, he no doubt would have adopted a description by metes and bounds which would have excluded such strip from the parcel conveyed.

In refutation of plaintiff's claim to title by adverse possession, respondent contends that the decision must be resolved from the premise that the strip in dispute was lawfully dedicated as a public street or road, and by virtue of that fact could not be held and possessed adversely until May 9, 1922, when the board of supervisors of Napa County passed a resolution of abandonment. In answer to this contention the record fails to establish an acceptance of the offer to dedicate made by the filing of the map of Sproul's Addition to East Napa in 1875, upon which said strip was delineated as a street, either by official acceptance or use of the same by the public. ■ An acceptance, either by public user or formal resolution of acceptance, is essential to a completed dedication. (*County of Inyo* v. *Given,* 183 Cal. 415 [191 Pac. 688]; *Hayward* v. *Manzer,* 70 Cal. 474 [13 Pac. 141]; 9 Cal. Jur. 52.) An acceptance of other

streets in the tract by user would not constitute an acceptance of the strip in dispute under the circumstances shown in this case.

■ Defendant Bachelder's main ground of objection to plaintiff's possession is that it was not shown to be hostile or under claim of title. We regard this contention as well taken. The burden is on one claiming title by adverse possession to establish all essentials of such title. Appellant would have us presume a claim of title from the fact of possession under the circumstances manifested in this case, rather than a holding in subordination to the record title. We are unable to make this assumption. The inclosure fence was not built by the Rogers in the assertion of dominion over the property, or at all, but was already there in 1877, when respondent Bachelder saw the land for the first time. It seems likely that it existed at the time of subdivision in 1874, when Sproul owned the entire tract. In 1896 Bachelder requested Rogers by letter to remove an obstruction to Spring Street, which he declared to be 60 feet wide. Rogers replied that he would put up his fence and open the road when he finished plowing, and Bachelder answered that it might not be necessary for Rogers to go to that expense. Although the road was not opened, this letter shows knowledge of its existence on the map, and tends to negative a claim of title. It does more. It is evidence of Rogers' frame of mind as to the existence of a right which the public had in said mapped road superior to his claim of possession, as he was willing to accede to respondent's request or demand to open the road, which was excused by the grace of respondent merely to relieve Rogers of immediate expense and inconvenience to which he would have been put had respondent continued to insist upon his demand. Rogers' conduct is not consistent with the claim now made that his occupancy was hostile to all the world.

■ Again, appellant's claim is weakened by the fact that neither he nor his predecessors ever paid taxes on any part of said mapped road. As no taxes were assessed against said strip until after the board of supervisors passed the resolution of abandonment in 1922 this of itself would not prevent them from acquiring title by adverse possession. (Sec. 325, Code Civ. Proc.; *Harvey* v. *Meyer*, 117 Cal. 60 [48 Pac. 1014].) But after the abandonment of the street

in 1922, taxes were assessed, apparently at respondent's solicitation, separately against the southerly one-half of the strip to and paid by respondent, without objection on the part of appellant or his predecessors that they should be assessed to them as owners of the entire strip. Further, when Mrs. Rogers conveyed the northerly parcel to her sister and husband, Elizabeth V. and John E. Bosworth, in 1926, she adopted a description which excluded any portion of the strip in controversy. The Bosworths conveyed to plaintiff in his personal capacity, using the same description. *Thereafter* plaintiff procured a *second* deed from them which included the whole of said strip, which deed, however, would not pass title to him for the reason that the Bosworths derived no title thereto under the deed to them from Mrs. Rogers. This is another circumstance tending to weaken a hostile claim on appellant's part.

In the absence of an affirmative showing sufficient to explain or overcome the probative effect of the facts and circumstances detailed, we cannot assume that the possession of plaintiff's predecessors was hostile. There is evidence in the record which tends to support a contrary conclusion.

The judgment is affirmed.

Preston, J., Langdon, J., Curtis, J., Shenk, J., and Waste, C. J., concurred.