[Sac. No. 3522. In Bank.—May 15, 1924.]

## JOHN J. JOENS, Appellant, v. C. O. BAUMBACH, Respondent.

[1] DEEDS—LAND ABUTTING ROADWAY—PRESUMPTION—INTENTION.— In cases in which the intention of the grantor rests upon presumption, the rule that where a conveyance is of property abutting a public highway the presumption is of an intention on the part of the grantor to convey title to the center of the highway may be applied; and land described in a deed as bounded by a public highway or street will be considered as bounded by the center of the street, unless it clearly appears that it was intended to make the side line of the street a boundary instead of the center.

[2] ID.—PRESUMPTIONS—REBUTTAL.—While the presumption declared by the codes that an owner of land bounded by a road or street is presumed to own to the center of the way, will in all proper cases be given effect, it is one which in many ways may be rebutted, and one of the specific ways it may be rebutted is by a description by metes and bounds.

[3] ID.—LAND FRONTING ON ROADWAY—POSSESSION—DESCRIPTION— CONSTRUCTION.—However clearly it may appear that an owner of a parcel of land, the southern boundary of which is described in the grant to him as running easterly and fronting "on the county road" a specified number of feet from a stated point, holds title to the center of the roadway subject to a public easement, and that the boundary of the parcel is technically, therefore, the center of the roadway, in view of the fact that the owner of such land has no right to the possession or occupancy of any portion of such roadway, and that the grantor of such parcel describes the same as fronting on the county road, and running thence northerly a given number of feet, it will be presumed that the grant conveys the given number of feet of land which is set apart

———

1. Description with reference to highway as carrying title to center of side of highway, notes, 46 Am. St. Rep. 495; 2 A. L. R. 6.

Location of division line under conveyance of land as affected by street, note, 6 A. L. R. 1165.

for private use and occupancy and that the true south line of such parcel is the north line of said county road and not the center thereof.

**[4]** ID.—DESCRIPTION—EVIDENCE.—The interpretation placed on such description of said parcel of land, viz., that the true south line thereof is the north line of the county road, is fortified by the further description of said parcel and the description of the adjoining north parcel contained in deeds executed by the common grantor to predecessors of the present owners, which descriptions expressly exclude from the lands conveyed a private roadway on the west, the description of the south parcel showing, by use of language almost similar to that used in describing the south line, that its westerly line extended only to the easterly side of said private roadway.

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Reversed.

The facts are stated in the opinion of the court.

Glenn West for Appellant.

Levinsky & Jones for Respondent.

WASTE, J.—Plaintiff brought this action to quiet title. Judgment was entered for the defendant and plaintiff has appealed.

Appellant and respondent are the owners of adjoining parcels of land, that of the respondent being described as lying immediately north of that belonging to the appellant. The location of the boundary line between the two properties is really the point in dispute, and the controversy involves the title to a strip of land thirty feet in width. A solution of the problem presented by the appeal depends upon the proper interpretation to be given the description contained in the deed by which appellant acquired his land. James W. McMannis was the common owner of both parcels of land. On June 2, 1902, he conveyed the land now owned by plaintiff to William T. Hughes, who, in turn, on July 11, 1919, and by deed containing the same description as in the deed to him, conveyed the property to plaintiff. The property so conveyed was designated as being in the county of San Joaquin, "and bounded and particularly described as follows, to-wit: Seventeen acres in the Southwest corner of

the Southeast quarter of the Southwest quarter of Section Eight (8) in Township Three (3) North, of Range Seven (7) East, M. D. M., more particularly described as follows: Beginning at a point on the county road twenty feet east of a line bisecting north and south said Southwest quarter of Section Eight in equal halves; running thence easterly on the county road eight hundred and twenty-three (823) feet; thence northerly nine hundred (900) feet; thence westerly eight hundred and twenty-three (823) feet; thence southerly nine hundred (900) feet to the point of beginning, containing seventeen acres, more or less, and the land herein described fronts on the county road a distance of eight hundred and twenty-three (823) feet on its south line, and fronts nine hundred feet on a reserved roadway forty feet wide, upon its west side.''

On December 15, 1902, which was after the execution of the deed to Hughes, grantor of appellant, McMannis conveyed to Joseph Spenker, predecessor in interest of the respondent Baumbach, who now owns the property, a parcel of land described as follows: ''Commencing at the Northwest corner of the Southeast quarter of the Southwest quarter of Section Eight (8) in Township Three (3) North of Range Seven (7) East, M. D. M., and thence east along the said section line to the northeast corner of land sold to Martha Ann Bunch Taylor by deed recorded in Book 'A,' Vol. 117, at page 319, San Joaquin County Records; thence south on the westerly line of said land of said Martha Ann Bunch Taylor to the northeast corner of land sold to William T. Hughes, by deed recorded in Book 'A,' Vol. 125, at page 55, San Joaquin County Records; thence west along the north line of said Hughes' land to the west side of the Southeast quarter of the Southwest quarter of said Section Eight (8); thence North along said west line to place of beginning; and excepting therefrom a roadway twenty feet wide along the west side of said tract of land, containing eight acres of land, or thereabouts.''

It is at once apparent that no assistance is to be derived from the deed to respondent in reaching a correct interpretation of the description of appellant's land. The references to the ''county road'' and ''a reserved roadway'' contained in the description of the land acquired and owned by appellant are made somewhat clearer by an inspection of a plat of

the survey of the property of plaintiff introduced in evidence by stipulation, to show the location of these roadways. This survey discloses that there is a county road sixty feet wide immediately south of the property of appellant, and that a road forty feet wide, spoken of by the parties as a "private roadway," is located immediately west of the lands of appellant and respondent. The survey also discloses that the south line of section eight is the center line of the county road, and that the line "bisecting north and south said southwest quarter of section eight in equal halves," referred to in the description of appellant's land, is the center line of the private roadway. The point at issue is whether the land of the appellant is bounded on the south by the south section line which marks the center of the road, or whether the true southerly boundary line is the north line of the county road. If the land of appellant runs to the center of the roadway, the northerly thirty feet of the land claimed by him belongs to the respondent. If a correct interpretation of the description of the property fixes the north line of the county road as the southerly boundary of appellant's land, the property in dispute belongs to him. In other words, if the call in appellant's deed, running "thence northerly nine hundred (900) feet," begins at the section line in the center of the county road, and the final call, running "thence southerly nine hundred (900) feet to the point of beginning," ends at the point of intersection of said line with the section line, the north boundary of appellant's land lies thirty feet south of the point where he contends it is, and where it should be if the north line of the roadway is the proper southerly boundary of his land.

The respondent's contention that the section line marking the center line of the county road is the true south line of appellant's property is based upon the language of section 831 of the Civil Code to the effect that "an owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown," and section 1112 of the Civil Code to the effect that "a transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant." The argument of the respondent rests upon the general rule that where a conveyance is of prop-

erty abutting upon a public highway, the presumption is of an intention on the part of the grantor to convey title to the center of the highway. **[1]** There can be no doubt that in those cases in which the intention of the grantor rests upon presumption the rule just stated may be applied, and that land described in a deed as bounded by a public highway or street will be considered as bounded by the center of the street, unless it clearly appears that it was intended to make the side line of the street a boundary instead of the center. (*Moody* v. *Palmer,* 50 Cal. 31.) That rule, however, cannot be correctly applied in this case. **[2]** The decisions of our court are to the effect that, while the presumption declared by the codes will in all proper cases be given effect, it is one which in many ways may be rebutted, and one of the specific ways it may be rebutted is by a description by metes and bounds. (*Berton* v. *All Persons,* 176 Cal. 610, 614 [170 Pac. 151].)

**[3]** However clearly it may appear that an owner of a parcel of land holds title to the center of an adjoining roadway subject to a public easement, and that the boundary of the parcel is technically, therefore, the center of the street, in view of the fact that the owner of such land has no right to the possession or occupancy of any portion of such roadway, we are of opinion that, when a grantor describes his land, as was done in this case, as fronting on the county road, and running "thence northerly nine hundred (900) feet," it will be presumed that the grant conveys the given number of feet of land which is set apart for private use and occupancy. (*Earl* v. *Dutour,* 181 Cal. 58, 60 [6 A. L. R. 1163, 183 Pac. 438].) **[4]** In the instant case we are aided in arriving at a solution of the problem by the descriptions in the deeds executed by McMannis, the common grantor. He did not include any part of the private roadway in the property conveyed to either Hughes or Spenker. In the deed to Hughes, the private roadway was excluded by the description by metes and bounds, and in the deed to Spenker by the language "excepting therefrom a roadway twenty feet wide along the west side of said tract of land." Therefore, the further description contained in the deeds from McMannis to Hughes and Hughes to appellant that the land fronts on the county road a distance of 823 feet on its south line and

fronts 900 feet on a reserved roadway forty feet wide on its west side is of material assistance in interpreting the description by metes and bounds. The land so described extended only to the easterly side of the private roadway, and that is undoubtedly what the grantors meant in using the expression "fronts . . . on a reserved roadway . . . upon its west side." The further description, that the land "fronts on the county road . . . on its south line," should be given the same effect as that which is so clearly indicated by the description of the westerly front of the property. We think it clear that McMannis, in deeding to Hughes, and the latter, in deeding to appellant, intended that the property conveyed should be bounded on the south by the north line of the county road. The land of appellant commences at the north line of the county road and extends 900 feet northerly. Consequently, the title to the strip thirty feet in width, which is in dispute here, is vested in appellant.

Some evidence was introduced in the court below, on the part of respondent, tending to establish title in him by adverse possession. The thirty-foot strip of land was part of a vineyard, and there was testimony that on some occasions appellant and his predecessor were in possession, and that at other times, the respondent exercised rights of ownership over the property. It was stipulated that each party had been assessed and paid taxes upon the land "as described in the deeds." It would seem, therefore, that in order to determine on what property the parties paid taxes, it would be necessary to interpret the deeds to the property in question, which would, in effect, result in disregarding the question of adverse possession and in relying upon the record title.

The judgment is reversed.

Lennon, J., Richards, J., Seawell, J., Shenk, J., Lawlor, J., and Myers, C. J., concurred.

Rehearing denied.

All the Justices concurred.